IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HARRISON DIVISION

LESTER D. MARTIN                                                    PLAINTIFF

V.                                      NO. 12-3089

CAROLYN W. COLVIN,[1]
Acting Commissioner of the Social Security Administration          DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff, Lester D. Martin, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

Plaintiff filed his applications for DIB and SSI on September 4, 2009, alleging disability since July 1, 2008, due to "Seizures, high blood pressure."  (Tr. 129-131, 137-139, 166, 171). An administrative hearing was held on November 4, 2010, at which Plaintiff appeared with counsel, and he and his girlfriend testified. (Tr. 25-69).

By written decision dated May 4, 2011, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe - occasional seizures associated with alcohol abuse. (Tr. 11). However, after reviewing all of the evidence

---

[1]Carolyn W. Colvin, has been appointed to serve as acting Commissioner of Social Security, and is substituted as Defendant, pursuant to Rule  25(d)(1) of the Federal Rules of Civil Procedure.

-1-

presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 12). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform a full range of work at all exertional levels but with the following nonexertional limitations: due to his seizure disorder, he must avoid hazards such as driving, unprotected heights, and heavy machinery.

(Tr. 13). The ALJ found that Plaintiff's ability to perform work at all exertional levels had been compromised by nonexertional limitations, but that the limitations had little or no effect on the occupational base of unskilled work at all exertional levels. The ALJ therefore found Plaintiff was "not disabled" under the framework of section 204.00 in the Medical-Vocational Guidelines. (Tr. 19). Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied the request. (Tr. 1-4). Subsequently, Plaintiff filed this action. (Doc. 1). Both parties have filed briefs and this case is before the undersigned for report and recommendation. (Docs. 7, 8).

The Court has reviewed the entire transcript. The complete set of facts and arguments are presented in the parties' briefs, and is repeated here only to the extent necessary.

**I.     Evidence Presented:**

Plaintiff was born in 1968 and received a high school education. (Tr. 166, 177). Plaintiff began having seizures some time around 2000 (Tr. 383), and the medical records, which reflect care beginning in 2006, reflect that Plaintiff was taking Tegretol (Carbamazepine) for his seizures. (Tr. 327). On October 2, 2006, Plaintiff visited Mountain Home Christian Clinic, and was reported as having dizziness and as having a history of seizure disorder. (Tr. 329). It was also reported that Plaintiff smoked 1 ½ pack of cigarettes per day, and used alcohol occasionally.

-2-

(Tr. 329).

On June 7, 2007, Plaintiff again presented himself to Mountain Home Christian Clinic, reporting he was out of Tegretol. (Tr. 328).

By February 6, 2008, Plaintiff was reported as smoking two packs of cigarettes per day and drinking alcohol two times weekly. (Tr. 308).  On February 18, 2008, when Plaintiff presented himself as a new patient to Dr. George S. Lawrence, of Regional Family Medicine, it was reported that Plaintiff was a heavy smoker and drank 6 beers a day. (Tr. 337).

On May 10, 2008, Plaintiff was presented to Baxter Regional Medical Center after he fell from a parked van and sustained a laceration to his right brow. (Tr. 292, 293). It was also reported that a strong ETOH odor was present. (Tr. 293).  No acute intracranial hemorrhage was seen in the CT of his head. (Tr. 295).

On May 14, 2008, Plaintiff was seen by Mary Burr, ANP, in Dr. Lawrence's office, and he was complaining of pain on his right side as a result of the fall the previous Saturday. (Tr. 334). Ms. Burr reported that Plaintiff had not been taking his medication as prescribed, and had been "pretty sporadic" with the Tegretol. (Tr. 334). Plaintiff's "significant other" was with him and reported that Plaintiff was very drunk at the time of the incident. (Tr. 334).

On December 20, 2008, Plaintiff presented himself to Baxter Regional Medical Center for possible seizure activity. (Tr. 271). A strong odor of ETOH was then reported, as well as the fact that Plaintiff had stopped taking his seizure medication. (Tr. 271).

On January 21, 2009, Plaintiff again appeared at Baxter Regional Medical Center, as he was found at a lakeshore by a bystander, unresponsive.  (Tr. 269). Plaintiff reported his seizure history, that he had been out of medication, and drank six beers that day. (Tr. 269).  He was

-3-

diagnosed with seizure disorder and noncompliant with medications. (Tr. 269).

On October 26, 2009, a Neuropsychological Evaluation was performed by Dr. Vann Smith. (Tr. 362-365). Plaintiff's clinical history was obtained by Dr. Smith from Plaintiff, and medical records were "being requested for review." (Tr. 362). Dr. Smith diagnosed Plaintiff with cognitive disorder, non-psychotic, secondary to general medical conditions of: seizure d/o per patient history; HTN, per patient history; CAD, per patient history; TBI with Grade III concussion and subdural hematoma; and chronic non-psychogenic pain disorder. (Tr. 365). Dr. Smith also completed a Mental RFC Questionnaire, giving Plaintiff a current GAF of 30-35. (Tr. 366).

On February 10, 2010, a Mental Status and Evaluation of Adaptive Functioning was performed by Nancy A. Bunting, Ph.D. (Tr. 381-385). Dr. Bunting noted that Plaintiff first reported that he took his medicine regularly, and then it became clear that someone needed to remind him and he had not been taking it regularly, as there were too many pills left. (Tr. 381). Dr. Bunting noted that he had seizures beginning in approximately 2000, and the last one was 5 days prior, and opined that this was probably due to the fact that Plaintiff's medication was ineffective because he was not taking it regularly. (Tr. 383). Dr. Bunting diagnosed Plaintiff as follows:

| | |
|---|---|
| Axis I: | alcohol dependence in remission by report |
| Axis II: | no diagnosis |
| Axis III: | seizure disorder, history of head trauma |
| Axis IV: | moderate |
| Axis V: | GAF 48-58 |

(Tr. 383). Dr. Bunting found that Plaintiff communicated and interacted in a socially adequate manner and in an intelligible and effective manner; had little ability to cope with the typical

-4-

mental/cognitive demands of basic work-like tasks; could not remember to consistently take his medication for seizures with serious results; had some ability to deal with co-workers and supervisors ; had a limited ability to deal with the public or work stress or changes; had little ability to attend and sustain his concentration on basic tasks; had some ability to sustain persistence in completing tasks for at least short periods of time; and had little ability to complete work-like tasks within an acceptable time frame given his memory problems, variable concentration, and fatigue. (Tr. 385). Dr. Bunting opined that if Plaintiff was consistently on medication and his seizures were under control, his mental status scores would probably be different. (Tr. 385).

On January 16, 2010, Plaintiff presented to Baxter Regional Medical Center complaining of shoulder pain as a result of a fall. (Tr. 455). It was reported that he had no loss of consciousness and was inebriated enough that he was a terrible historian. (Tr. 455-456). He was reported as drinking heavily on a daily basis, and admitted that he was an alcoholic, drinking more than a 12-pack on a daily basis, and smoking 2-3 packs of cigarettes a day. (Tr. 456).

A February 17, 2010 Psychiatric Review Technique form, completed by Kay Cogbill, M.D., on February 17, 2010, reflected that Plaintiff's mental impairments were not severe. (Tr. 393). It was determined that Plaintiff had a mild degree of limitation in restriction of activities of daily living, difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace, and had no episodes of decompensation. (Tr. 403).

On July 15, 2010 and August 14, 2010, ambulances were called because Plaintiff had experienced seizures. (Tr. 444, 447). Both times, Plaintiff refused to be transported to the hospital. (Tr. 446, 449).

On November 13, 2010, an ambulance was called because of Plaintiff's seizure activity, but he again refused to be transported to the hospital. (Tr. 441).

On March 5, 2011, Plaintiff presented to the emergency room of Baxter Regional Medical Center, relating he had a seizure at home. (Tr. 431). He was reported as being very inebriated, and could not tell his history. (Tr. 431). Plaintiff's blood alcohol was 341, and his urine drug screen was positive for marijuana. (Tr. 432). The impression was alcohol intoxication and seizure disorder. (Tr. 432).

## II.    Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one

AO72A
(Rev. 8/82)

year and that prevents him from engaging in any substantial gainful activity.  <u>Pearsall v. Massanari</u>, 274 F. 3d 1211, 1217 (8th Cir. 2001); <u>see also</u> 42 U.S.C. §§423(d)(1)(A), 1382c(a)(3)(A).  The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. §§423(d)(3), 1382(3)(D).  A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s) prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience.  <u>See</u> 20 C.F.R. §416.920.  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity (RFC).  <u>See</u> <u>McCoy v. Schneider</u>, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §416.920.

**III.**   **Discussion:**

Plaintiff raises the following issues on appeal: 1) The ALJ erred in failing to propound a single hypothetical to the VE; and 2) The ALJ erred in determining Plaintiff's RFC. (Doc. 7).

**A.**   **Use of Medical Grids:**

In this case, the ALJ found that Plaintiff's ability to perform work at all exertional levels

-7-

had been compromised by nonexertional limitations, but that these limitations had little or no effect on the occupational base of unskilled work at all exertional levels. (Tr.19), Therefore, he found that a finding of "not disabled" was appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines. (Tr. 19).

"[A]n ALJ may use the Guidelines even though there is a nonexertional impairment if the ALJ finds, and the record supports the finding, that the nonexertional impairment does not diminish the claimant's residual functional capacity to perform the full range of activities listed in the Guidelines." Lucy v. Chater, 113 F.3d 905, 908 (8th Cir.1997) (quoting Thompson v. Astrue, 850 F.2d 346, 349-50 (8th Cir. 1988). As noted by Defendant, SSR 85-15, provides, in pertinent part:

> A person with a seizure disorder who is restricted only from being on unprotected elevations and ear dangerous moving machinery is an example of someone whose environmental restriction does not have a significant effect on work that exists at all exertional levels.

SSR 85-15, 1985 WL 56857, 8 (SSA)(Environmental Restrictions)..

In addition, the record is replete with instances of Plaintiff's heavy drinking as well as instances of Plaintiff's non-compliance with respect to taking his seizure medication. "Failure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits." Brown v. Barnhart, 390 F.3d 535, 540-41 (8th Cir. 2004)(citations omitted). The ALJ properly applied Grids Rule 204.00 in finding Plaintiff "not disabled."

**B.   RFC Determination:**

RFC is the most a person can do despite that person's limitations. 20 C.F.R. §404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes

medical records, observations of treating physicians and others, and the claimant's own description of his limitations.  Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004).  Limitations resulting from symptoms such as pain are also factored into the assessment.  20 C.F.R. § 404.1545(a)(3).  The Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001).  Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace."  Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003).  "The ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC."  Id.

In the present case, the ALJ reviewed and considered all of the medical records, opinions of the treating physicians and non-consulting examiners, and Plaintiff's own description of his limitations.  The ALJ concluded that with respect to Plaintiff's seizures, the medical evidence showed that Plaintiff was not limited to the extent alleged because his seizures were often associated with alcohol usage and failure to take his medication. (Tr. 15).  Furthermore, on January 17, 2010, when Plaintiff fell and was intoxicated, he denied any recent seizure activity. (Tr. 456). This would indicate that his seizure activity was controlled as long as he took his medication.  The record as a whole clearly indicates a long association of drinking and noncompliance with medication.  As stated earlier, even Dr. Bunting, in her February 2010 evaluation, noted Plaintiff had not been taking it regularly.

With respect to the weight the ALJ gave the opinion evidence, he gave Dr. Bunting's evaluation some weight, but discounted some of her conclusions because they were not

-9-

consistent with the evidence as a whole.  The ALJ reported that Dr. Bunting's conclusion did not seem to take into account her own observation that Plaintiff was not a reliable informant, and that she did not explain why Plaintiff could not remember to take his medications. (Tr. 16).  The ALJ also gave Dr. Smith's opinion very little weight, and thoroughly explained why. (Tr. 17-18). The fact that Dr. Smith not only saw Plaintiff one time, and did not have Plaintiff's previous medical records, certainly warrants giving his opinion little weight.

Based upon the foregoing, as well as those reasons given in Defendant's well-stated brief, the Court is of the opinion that there is substantial evidence to support the ALJ's RFC determination.

## IV.    Conclusion:

Based upon the foregoing, the Court recommends affirming the ALJ's decision, and dismissing Plaintiff's case with prejudice.  **The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 15th day of October, 2013.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

-10-